UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JUAN CARLOS DELGADO CADRANO,

Petitioner,

v.

CHRISTOPHER J. LAROSE, Warden of Otay Mesa Detention Center, et al.,

Respondents.

Case No.: 3:26-cv-05551-RBM-VET

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

Pending before the Court is Petitioner Juan Carlos Delgado Cadrano's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. 1.) For the reasons below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner is a citizen of Costa Rica who entered the United States without inspection at or near El Paso, Texas on or about August 26, 2022. (*Id.* ¶ 28; Doc. 4-1 at 3.) The Department of Homeland Security ("DHS") granted Petitioner parole under 8 U.S.C. § 1182(d)(5). (Doc. 4 at 2.) Following that grant of parole, Petitioner resided continuously for over four years in Utah, followed all procedures as instructed by ICE, and worked in construction. (Doc. 5 at 5, 7; Doc. 1-2 at 2.)

///

On August 19, 2026, Petitioner was detained by ICE. (Doc. 1-2 [Decl. of Juan Carlos Delgado Cadrano] ¶ 8.) Two days later, he was served with a Notice to Appear ("NTA"). (Doc. 4-1 at 2). On September 28, 2026, Petitioner filed his Petition. (Doc. 1.) The Court set a briefing schedule the next day. (Doc. 2.) Respondents filed their Return to Petition on October 6, 2026. (Doc. 4.) Petitioner filed his Traverse on October 9, 2026. (Doc. 5.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner argues that his detention violates the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause. (Doc. 1 ¶¶ 38–57.) He seeks immediate release and to enjoin Respondents from rearresting or re-detaining him absent lawful statutory authority and compliance with applicable constitutional provisions. (*Id.*, Prayer for Relief.) Respondents argue that: (1) Petitioner must first exhaust administrative remedies; and (2) Petitioner is mandatorily detained under 8 U.S.C. § 1225(b).[1] (Doc. 4 at

---

[1] Respondents also argue that Petitioner's claims are jurisdictionally barred by 8 U.S.C. §§ 1252(g) and 1252(b)(9). The Court has consistently rejected Respondents' jurisdictional argument, *see Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1161–62 (S.D. Cal. 2025), and does so again here for the same reasons. Petitioner challenges violations of ICE's duties under the Constitution. He is thus enforcing his "constitutional rights to

2–4.)

**A. Exhaustion**

Respondents also argue that the Court should deny the Petition for failure to exhaust administrative remedies. (Doc. 4 at 4.) However, the Court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up). Here, Petitioner challenges his arrest and detention as unconstitutional (Doc. 5 at 6); as Petitioner notes, even if he presented his custody redetermination case to an immigration judge or the BIA, that would not address his underlying constitutional claims. *See Sarr v. Casey*, Case No.: 3:26-cv-02343-RBM-MSB, 2026 WL 1419635, at *3 (S.D. Cal. May 20, 2026) ("Any appeal Petitioner would make to the BIA would only be a review of the determination by the IJ at the bond hearing and would not address the propriety of Petitioner's detention, which concerns the constitutionality of an agency action prior to the bond hearing."); *see also Jemna v. Mullin*, Case No.: 3:26-cv-02396-RBM-VET, 2026 WL 2936600, at *4 (S.D. Cal. Sept. 29, 2026) ("Constitutional claims are generally excepted from the exhaustion requirement because neither immigration judges nor the BIA are permitted to consider constitutional challenges to the statutes they administer.") (citation modified). Therefore, the Court waives the prudential exhaustion requirement here.

**B. Due Process**

Petitioner asserts that his August 19, 2026, arrest without prior notice or a pre-deprivation hearing violated his due process rights. (Doc. 5 at 7.) He claims that 8 U.S.C. § 1226(a) applies to his detention. Respondents contend that, because Petitioner's parole

---

due process in the context of the removal proceedings—not the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025).

was terminated upon service of the NTA, or in any event had expired, his status is that of an "applicant for admission, subject to mandatory detention under 8 U.S.C. § 1225(b)(2)." (Doc. 4 at 5.)

The Court finds that § 1226(a), rather than § 1225(b), applies to Petitioner, because an expiration of a noncitizen's parole does not automatically render him an "arriving alien" subject to mandatory detention. *See Ferrera v. Scott*, CASE NO.: C26-2982-KKE, 2026 WL 2884139, at *3 (W.D. Wash. Sept. 25, 2026); *see also Patrick v. Larose*, Case No.: 26-cv-4670 JAO (BJW), 2026 WL 2574361, at *2–3 (S.D. Cal. Aug. 31, 2026). However, "even if Petitioner could be subject to mandatory detention under § 1225, that would not resolve the instant Petition as 'many courts in the Ninth Circuit have held that the expiration of parole does not extinguish a petitioner's entitlement to due process.'" *Patrick*, 2026 WL 2574361, at *3 (quoting *Aliyev v. LaRose*, Case No.: 3:26-cv-01119-CAB-JLB, 2026 WL 699818, at *2 (S.D. Cal. Mar. 12, 2026) (collecting cases)).

The Court notes that it has granted several habeas petitions filed by similarly situated petitioners. *See Sarr*, 2026 WL 1419635, at *3; *Perez v. LaRose*, Case No.: 3:25-cv-02620-RBM-JLB, 2025 WL 3171742, at *7 (S.D. Cal. Nov. 13, 2025); *Velasquez-Chinga v. Noem*, Case No.: 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026). For example, in *Perez*, the Court applied the due process inquiry in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and found that "all three factors support[ed] a finding that Respondents' revocation of [the petitioner's] parole without reasoning or an opportunity to be heard deprived [the petitioner] of his due process rights." 2025 WL 3171742, at *5. The Court concluded that revocation of the petitioner's parole violated the Due Process Clause and rendered his detention unlawful. *Id.* The Court reached the same conclusion in *Velasquez-Chinga*, finding that revocation of the petitioner's parole without an individualized determination or an opportunity to be heard "was neither consistent with 8 U.S.C. § 1182(d)(5)(A) nor the demands of due process." 2026 WL 311507, at *3 (citation omitted).

To determine which procedures are constitutionally sufficient to satisfy the Due

Process Clause, the Court applies the three-part test established in *Mathews*, 424 U.S. at 335. The Court considers: (1) "the private interest that will be affected by the official action"; (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that Respondents' arrest of Petitioner without prior notice or an opportunity to be heard deprived Petitioner of his due process rights. First, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[The petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [the petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."). Here, like the petitioners in *Perez* and *Velasquez-Chinga*, Petitioner was detained after having resided in the United States for over a year (here, Petitioner resided in the United States for more than four years). (*See* Doc. 5 at 5.) In that time, he complied with all procedures set by ICE during his parole. (*Id.* at 7.)

Second, the risk of an erroneous deprivation of such interest is high as Petitioner was arrested and detained without notice or an opportunity to be heard. *See Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. July 11, 2025) (finding where, as here, Petitioner "has not received any bond or custody redetermination hearing," the "risk of an erroneous deprivation of liberty is high.").

Third, Respondents' interest in detaining Petitioner without reasoning or a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an

administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). "Therefore, because Respondents detained Petitioner by revoking [his] parole in violation of the Due Process Clause, [his] detention is unlawful." *Gonzalez Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025); *accord Alvarado v. Warden*, Case No. 1:26-cv-02749-JLT-SKO, 2026 WL 1179739, at *1–3 (E.D. Cal. Apr. 30, 2026) (granting petition and ordering immediate release because the petitioner did not receive a pre-deprivation hearing) (collecting cases).

Based on the above, the Court finds that Petitioner's detention without a pre-deprivation hearing violates due process. The Court also finds that immediate release, rather than a bond hearing, is the appropriate remedy. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) ("if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid").[2]

## IV. CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole.
2. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner shall

---

[2] In light of the disposition herein, the Court declines to address Petitioner's arguments regarding his warrantless arrest.

receive a hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) to determine whether detention is warranted. At any such hearing, the noncitizen **SHALL BEAR** the burden of establishing, by a preponderance of the evidence, that he is not a flight risk or a danger to the community. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

3. At any such hearing, if the immigration judge determines that bond is appropriate, the immigration judge **SHALL** consider alternative conditions of release and the noncitizen's ability to pay. *See Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017).

**IT IS SO ORDERED.**

DATE: November 17, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE